**STEIN & NIEPORENT LLP**
David Stein (DS 2119)
David Nieporent (DN 6235)
1441 Broadway, Suite 6090
New York, New York 10018
(212) 308-3444
dstein@steinllp.com

Attorneys for Plaintiffs, Individually
and on behalf of all others similarly
situated

| | |
|---|---|
| Vinicio Villa, Jesus Salvador Gomez, and German Ventura, on behalf of themselves and all other persons similarly situated, <br><br> Plaintiffs, <br><br> - vs. – <br><br> Highbury Concrete Inc., Thomas Gorman, Thomas Fogarty, Benny Griffin, RG Labor Services Inc., and The Laura Group Inc. <br><br> Defendants. | DOCKET NO. 17-CV-984 <br> (PK) <br><br> **DECLARATION OF DAVID STEIN, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL** |

I, David Stein, declare, upon personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct.

1. I am an attorney admitted before this Court. I am a partner in the firm of Stein & Nieporent LLP, and a member of the firm Samuel & Stein, Plaintiffs' original counsel in the above-captioned action. Stein & Nieporent LLP and Samuel & Stein are New York City based law firms that practice almost exclusively in the area of wage and hour litigation. (Samuel & Stein no longer brings in new clients, but continues to represent clients in matters that it filed when it was active.)

2. I am one of the lawyers primarily responsible for the prosecution of Plaintiffs' claims against Defendants in the following action: *Villa et al. v. Highbury Concrete, Inc. et al.*, Civil Action No. 17 Civ. 984 (PK), (hereinafter referred to as the "Action").

3. I make this declaration in connection with Plaintiffs' motion for final approval of the settlement agreement reached by the parties in this action.

4. I make this declaration based on personal knowledge and would so testify if called as a witness at a hearing or trial.

## Notification to the Class

5. Based on records supplied by defendants to plaintiffs in the course of this litigation, we originally identified roughly 750 class members. However, the final class list supplied to us by defendants' counsel after preliminary approval had roughly 1,180 names on it.

6. We supplied those names to the settlement administrator, American Legal Claim Services, LLC ("ALCS"), along with last known addresses and social security numbers.

7. Pursuant to our guidance, ALCS utilized appropriate databases to identify alternate addresses for Class Members as necessary. ALCS was able to locate addresses for 1,039 of the 1,192 Class Members. (The Declaration of Mark Unkefer, case manager for ALCS, is attached hereto as **Exhibit A**.)

8. On April 14, 2023, Class Notices and Claim Forms were sent, in English and Spanish, to 1,187 Class Members on defendant's list. (Five individuals who were not originally on the list were subsequently identified, and they were also sent these documents.)

9. Throughout the claims period, we processed calls from Class Members who stated either that they had never received the notice packets, or that they had misplaced them.

10. On each occasion, we made arrangements with ALCS either to provide a replacement packet to these class members, either at a new address or by re-sending to the old address.

11. ALCS was ultimately able to obtain valid addresses for for 1,039 of the 1,192 (87%) of the class members; the remainder came back as undeliverable even when ALCS attempted to develop other addresses for these individuals.

12. As of the deadline of June 13, 2023, a total of 181 unique valid Claim Forms have been received and accepted by ALCS. (Of those, 12 are awaiting supplemental information from the claimants.)

13. No Class Members requested exclusion from the settlement or filed an objection.

### The Reaction of the Class to the Settlement Has Been Positive

14. No Class Members elected to opt-out of this class action.[1]

15. After dissemination of the settlement Notice, Class Counsel received telephone calls from a number of Class Members and answered their questions about their claims and the settlement process.

16. The response to the Notices has been positive. As of the date of this declaration, there have been no objections to the settlement, and, as mentioned *supra*, no requests to be excluded from the settlement.

---

[1] In June 2020, ten individuals did opt out. These ten individuals did so because they were already participants in an action filed in this District by another law firm against Defendants, *Flores et al. v. Highbury Concrete et al.*, 20-cv-1036, not because they had any specific objection to the settlement in the instant matter. (Indeed, June 2020 was years before the instant settlement was consummated.)

### Contributions of the Named Plaintiffs

17. The Named Plaintiffs were integral in litigating this class action and made significant contributions to the prosecution of the litigation.

18. The Named Plaintiffs were not the original named plaintiffs in this case, but after defendants "picked off" the original named plaintiffs with an Fed. R. Civ. P. 68 offer, the Named Plaintiffs stepped up and accepted the burden of prosecuting this case on behalf of the class, enabling 178 other individuals to be . Their service allowed over 1,000 current and/or former employees of Defendants' to be eligible to recover unpaid wages, with 181 Class Members actually taking advantage of that opportunity.

19. The Named Plaintiffs served the class by providing detailed factual information regarding their job duties and hours worked, and the job duties and hours worked of the class members, as well as providing detailed information about defendants' policies which were at issue in this litigation.

20. The Named Plaintiffs directly participated by assisting with the preparation of an amended complaint, encouraging numerous additional employees to come forward as witnesses, producing hundreds of pages of documents in support of their claims, relaying information to Class Members during the pendency of this case, and assuming the burdens associated with assisting with litigation, including sitting for their individual depositions.

21. The Named Plaintiffs also assisted Class Counsel with the settlement negotiations and attended several extended settlement conferences with the Magistrate Judge, which ultimately culminated in this settlement.

22. The Named Plaintiffs also took risks that the Class Members did not. They risked their professional reputation and potential workplace retaliation from the Defendants and future employers by agreeing to be the Named Plaintiffs.

23. Without the effort of the Named Plaintiffs, this case on behalf of the Class would not have been brought, and this settlement would not have been achieved.

### Continued Litigation Would be Complex, Expensive, Time-Consuming and Risky

24. Class Counsel interviewed dozens of current and former employees of Defendant to gather information relevant to the claims in the litigation; obtained, reviewed, and analyzed thousands of pages of documents including but not limited to, time and payroll records, took and defended depositions; fielded questions from Plaintiffs and Class Members; preparing for and attending numerous lengthy and comprehensive settlement conferences; and engaged in extensive settlement negotiations.

25. Although the parties have already undertaken considerable time and expense in litigating and settling this matter, further litigation without settlement would necessarily result in additional expense and delay.

26. The parties have yet to resolve Fed. R. Civ. P. 23 class action status – defendants stipulated to it, but only conditionally — and defendants would likely contest that vigorously if the case did not settle, just as defendants originally did for FLSA collective certification (and, indeed, as they did for class certification; the stipulation occurred only after full briefing on the issue, but before a ruling).

27. Moreover, a trial on the merits would involve risks to Plaintiffs because of defendants' contention that many of the Class Members were not directly employed by them and should not be entitled to recover, and because defendants' record keeping practices

meant that damages would have to be estimated for the entire class and collective, a lengthy and time-consuming process. Defendants might well have contested the validity of those estimations.

28. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides.

29. Any judgment would likely be appealed, thereby extending the duration of the litigation.

30. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Although the funds themselves will be paid out over time, they are guaranteed by a Confession of Judgment to which Defendants have agreed, and Plaintiffs required a provision of the Settlement Agreement that prevented Defendants from conveying or encumbering their primary hard assets – certain real property in New York – until the Settlement is fully satisfied.

31. The final Settlement Agreement is annexed hereto as **Exhibit B**.

32. On November 25, 2022, the Court granted preliminary approval of the settlement.

## Class Counsel's Qualifications and Fees

33. The lawyers at Stein & Nieporent LLP (formerly at Samuel & Stein) have been litigating this class and collective action for roughly five years without compensation.[2]

34. The Named Plaintiffs agreed to Class Counsel's fees of up to one-third of the settlement fund and reimbursement for costs. Both the Named Plaintiffs specifically agreed in

---

[2] The Court may recall that at an earlier phase of the case, defendants attempted to moot the case by picking off the original named plaintiffs, and a handful of early opt-ins, with an Fed. R. Civ. P. 68 offer of judgment. Counsel did receive compensation for representing those seven individuals. However, that was in mid-2018, and counsel has not received any compensation for representing the current named plaintiffs or the class since then.

their individually negotiated retainer agreements, that Class Counsel would recover up to one-third of the settlement, plus reimbursement for litigation costs.

35. The Notice of Settlement that was disseminated to the Class Members states that Class Counsel will seek payment of one-third of the settlement, or approximately $666,666.67, plus reimbursement of expenses, as well as class administration expenses.

36. Stein & Nieporent / Samuel & Stein has substantial experience prosecuting and settling wage and hour collective and class actions, serving as lead or co-lead counsel on numerous wage and hour cases that district courts have certified as class actions and/or collective actions. *See e.g., Campbell v. Steadman Parking*, 12-cv-4318 (SMG), (E.D.N.Y., Sep. 26, 2013)(FLSA collective and Rule 23 class action); *Lopic et al. v. Diskal, Inc., et al.*, 14-cv-2822 (RLM) (same); *O'Connor v. RCI Plumbing*, 10-cv-3477 (JG)(MDG) (E.D.N.Y., Jan. 25, 2011)(FLSA collective action); *Caesar v. Alex Figliola Contracting*, 11-cv-82 (RRM)(JO) (E.D.N.Y., May 6, 2011)(FLSA collective action); *Basurto v. Café Au Bon Gout*, 12-cv-3758 (LTS)(FM)(S.D.N.Y., Nov. 16, 2012)(FLSA collective action); *Talbert v. Garda CL Great Lakes Inc.*, 13-cv-10353 (AJT)(MKM)(E.D.MI., June 22, 2016)(FLSA collective action); *Gomez et al. v. TNJ Enterprises Inc., et al.*, 16-CV-4824 (SDW)(LDW)(D.NJ, Oct. 27, 2017)(FLSA collective and Rule 23 class action).

37. I am a founding partner of Stein & Nieporent LLP, as well as its predecessor Samuel & Stein which filed this case, and I have been counsel of record in more than 350 federal wage-and-hour cases in New Jersey and New York. I have been continuously practicing law since 1990. I have been admitted to practice in the state of New York since the year 2000, and have been admitted in the states of Illinois, Pennsylvania, New

Jersey, and the District of Columbia. My practice focused on Fair Labor Standards Act and New York Labor Law unpaid wages lawsuits almost exclusively since 2008 (although less so since the pandemic), including trying several federal wage and hour cases to verdict and serving as lead counsel on a multi-million dollar federal wage and hour collective and class action. In addition to being admitted in the Southern, Eastern, and Northern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia.

38. David Nieporent is a founding partner at Stein & Nieporent LLP and was a senior associate at Samuel & Stein. He has worked with me on hundreds of federal wage-and-hour cases. He has been practicing law since admission in the state of New Jersey in 2001, and has been admitted in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation — although that has also diminished somewhat since the pandemic — and he has second chaired several successful wage and hour trials in federal court. In addition to his two state court admissions, he has been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

39. We are applying for a percentage of the Settlement Amount in this case, as provided for in the Settlement Agreement and as is common in Class Action settlements. Nevertheless, we provide information reflecting our lodestar for the Court's convenience: my regular hourly rate for matters such as these is $400. I believe this hourly rate to be commensurate with other practitioners with a similar amount of experience in my locality who represent clients in matters such as this.

I typically charge a discounted fee of $125 per hour for some case-related tasks that do not require the expertise of a senior partner. Mr. Nieporent's regular hourly rate is $325. I believe these rates to be reasonable for experienced attorneys for cases of this type and commensurate with the fees awarded to this firm in other cases of this type.

40. For example, Judge D'Arcy Hall recently awarded us those rates. *Lopez et al. v. Ki Moon Restaurant Inc., et al.*, 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *report and recommendation adopted by* 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021), as did Judge Brodie in *Pena v. Super Economic One Way Supermarket Corp., et al.*, 2021 WL 4755603, at *3 (E.D.N.Y. Sept. 8, 2021), *report and recommendation adopted by* 2021 WL 4398204 (E.D.N.Y. Sept. 25, 2021). And in the past we have been awarded fees of $375 and $325 in wage and hour cases in this district. *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (E.D.N.Y. May 24, 2018); *Vega v. K & C Interior Construction Corp., et al.*, 2018 WL 4376486 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted by* 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018).

41. And in the Southern District, for example, we were recently awarded fees of $425 and $325, respectively, by Judge Nathan in *Vasquez et al. v. NS Luxury Limousine Service Ltd. et al.*, 2022 WL 377378 (S.D.N.Y. Feb 8, 2022), and by Magistrate Judge Netburn in *Solano v. Andiamo Café Corp.*, 2021 WL 2201372 (S.D.N.Y. June 1, 2021), and in the default judgment context Judge Seibel recently approved fees of $425 and $325 for myself and David Nieporent, respectively, in *Medina Baca et al. v. NB General Construction Corp., et al*., 20-cv-4701 (CS) [Docket Entry

18](December 10, 2020). We have also been awarded fees of $400 and $325, respectively, by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016); by Judge Briccetti in *Lu v. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018); by Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 2018 WL 8996336 (S.D.N.Y., September 28, 2018); by Judge Oetken in *Zhu v. Salaam Bombay, Inc., et al.*, 2019 WL 76706 (January 2, 2019), and by Judge Daniels in *Martinez et al. v. 2009 Bamkp Corp. et al.*, 2019 WL 7708607 (S.D.N.Y. December 10, 2019), *report and recommendation adopted by* 2020 WL 409691 (S.D.N.Y. January 23, 2020).

42. In an effort to keep our lodestar down, I assigned as much work as possible to Mr. Nieporent throughout the case. Our policy is to record travel time at half the attorney's normal rate, though because of the pandemic, that has not been an issue for several years; in addition, Mr. Nieporent generally does not bill or record his time if we have an internal strategy conference. If we both appear at a conference or hearing, we generally record time for only one of us, or only half time for one of us. Moreover, we 'no charge' time spent when we think it was time spent that a paying client might object to.

43. Finally, as noted above (see footnote 2), we previously were awarded funds for representing some plaintiffs early in the case who accepted an Fed. R. Civ. P. 68 offer of judgment. The time we spent for that portion of the case, and the fees commensurate with that time, have been removed from our lodestar calculation listed in the following paragraph.

44. Based upon our records, Plaintiffs' lodestar — not including the previously compensated for time — is as follows:

| Attorney | Class | Rate[3] | Total Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $400 | 133.4 | $49,142.50 |
| David Nieporent | Senior Associate/Partner | $325 | 231.5 | $72,735.00 |
| **TOTAL** | | | **364.9** | **$121,877.50** |

45. Plaintiffs' costs and expenses, which were advanced by Samuel & Stein and Stein & Nieporent LLP on their behalf, were all necessarily incurred, and include the following:

    a. Deposition costs ($1,642.40)
    b. Postage ($1,053.73)
    c. Data analysis for computing damages ($4,565.00)
    d. Spanish interpreter costs ($819.25)
    e. Travel costs (Subway) ($16.50)

    These sum to $8,096.88. These are all litigation expenses that would ordinarily have been billed to paying clients in a non-contingency arrangement; there is no billing for "overhead" expenses. Invoices supporting these costs are included in Exhibit D.

46. Class Counsel routinely litigates against a number of the largest and best capitalized employment defense firms in the nation and relies on a small number of resolutions to continue to represent primarily low-income individuals in employment rights litigation.

47. Based on Class Counsel's extensive experience in precisely this type of litigation and our thorough familiarity with the factual and legal issues in this case, we have reached

---

[3] This is the primary rate for that individual when we are compensated on an hourly basis; as described *supra*, some tasks were recorded either at half rate or less because of the nature of the task. That information is reflected in the time records attached as Exhibit C.

the firm conclusion that the proposed Settlement is clearly in the best interests of the Named Plaintiffs and the Class Members.

48. Class Counsel has spent significant attorney time litigating and settling this case. We anticipate expending more hours after the date of this motion in appearing at the virtual Fairness Hearing and administering the Settlement. In particular, there is an extended payment schedule for defendants to fund the settlement, and while we have engaged the services of a Claims Administrator, we anticipate having to spend substantial amounts of time (for which we do not intend to seek reimbursement) fielding questions from and resolving concerns of Class Members over that time (as well as monitoring defendants to ensure that they make timely payments).

49. **The** hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney participating in this case. A complete contemporaneous record of Class Counsel's lodestar fees and costs (along with supporting documentation for the costs) is attached hereto as **Exhibits C and D.** (Note that these records also include time for which counsel was already compensated — see Footnote 2, *supra* — but that time is flagged as "Collected.")

## Settlement Administration Costs

50. The Settlement Administrator has incurred, or anticipates incurring, $58,408.00 in costs. (**Ex. A, ¶ 10**).

51. The remaining tasks required to complete the administration include: mailing settlement checks, distribution management, and tax reporting.

52. Because the Settlement Amount is being paid over 10 installments, which will take place over 2½ calendar years, the Settlement Administrator will be expected to handle tax reporting for all of those years.

53. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: July 5, 2023

_____
David Stein, Esq.