UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
VINICIO VILLA, JESUS SALVADOR GOMEZ, :
and GERMAN VENTURA, *on behalf of themselves* :
*and all other persons similarly situated*, :
　　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　Plaintiffs, 　 :　　　　　**DECISION AND ORDER**
　　　　　　　　　　　　　　　　　　　　 :
　　　　　　-against-　　　　　　　　　　 :　　　　　17-CV-984 (PK)
　　　　　　　　　　　　　　　　　　　　 :
HIGHBURY CONCRETE INC., THOMAS 　　　　:
GORMAN, THOMAS FOGARTY, BENNY 　　　　 :
GRIFFIN, RG LABOR SERVICES, INC., and 　　:
THE LAURA GROUP, INC.,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　Defendants. 　　:
--------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

　　　　In a Third Amended Class Action Complaint, Vinicio Villa, Jesus Salvador Gomez, and German Ventura ("Plaintiffs" or "Named Plaintiffs") brought this action against Highbury Concrete Inc., Thomas Gorman, Thomas Fogarty, Benny Griffin (the "Highbury Defendants"), RG Labor Services, Inc., and the Laura Group, Inc. (with the Highbury Defendants, "Defendants"), on behalf of themselves and all similarly situated employees of Defendants.[1]  (*See* Third Amended Complaint ("TAC") ¶¶ 28-29, Dkt. 171.)  The Court previously granted the parties' Motion for Preliminary Approval of Class Action Settlement.  *Villa v. Highbury Concrete Inc.*, No. 17-CV-984 (PK), 2022 WL 19073649, at *8 (E.D.N.Y. Nov. 25, 2022) ("Preliminary Approval Order").

　　　　Before the Court now is Plaintiffs' unopposed Motion for Final Settlement Approval. ("Motion," Dkt. 213; *see also* Dkt. 219.)  For the reasons stated below, the Motion is granted.

---

[1] Default was entered against Defendants RG Labor Services, Inc. and The Laura Group, Inc. on March 18, 2021.  (*See* Dkt. 180.)

1

## BACKGROUND AND PROCEDURAL HISTORY

On November 25, 2022, the Court preliminarily approved the parties' proposed class settlement, finding that it would likely be able to approve the proposed settlement as fair, reasonable, and adequate. Preliminary Approval Order at *2. The Court also approved the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Notice") and Claim Form (together with the Notice, the "Notice Packet"), and authorized issuance of the Notice Packet to Class Members. *Id.* at 8.

Pursuant to the Preliminary Approval Order, the claims administrator American Legal Claims Services, LLC ("ALCS") was provided with a list of Class Members which included, to the extent maintained by the Highbury Defendants, the Class Members' names, Social Security numbers, and last known addresses. (Decl. of David Stein ("Stein Decl.") ¶¶ 5-6, Dkt. 214.) ALCS determined that there were 1,187 unique Class Members on the list. Five additional Class Members were identified during the claims process, for a total of 1,192 Class Members. ALCS mailed the Notice Packet in English and Spanish to all Class Members. ("Pl. Mem." at 3, Dkt. 215; Stein Decl. ¶¶ 7-8.) Of these mailings, only 153, or 13%, were returned as undeliverable. (Pl. Mem. at 3; Stein Decl. ¶ 11.)

The Settlement Administrator received a total of 181 unique Claim Forms before the June 13, 2023 Claim Form deadline—a claims rate of 15% of the total Class. (Pl. Mem. at 3; Stein Decl. ¶ 12.) Twelve of these Claim Forms had insufficient information regarding employment dates. The claimants have been asked to cure these deficiencies, and if they do so before the Settlement Amount is disbursed, they will be eligible to receive their funds. (Pl. Mem. at 3; Stein Decl. ¶ 12.) No Class Members objected to the settlement or submitted a request to opt out of the Class. (Pl. Mem. at 3; Stein Decl. ¶ 13.)

A fairness hearing was held on July 10, 2023, and continued on July 19, 2023 and August 1, 2023.

**DISCUSSION**

1. **Approval of Class Action Settlement**

In preliminarily approving the settlement, the Court weighed the Fed. R. Civ. P. 23(e)(2) and the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F. 2d 448 (2d Cir. 1974) and found that it would likely be able to approve the proposed settlement as fair, reasonable, and adequate. Preliminary Approval Order at *8.

The Court now finds that Plaintiffs and Class Counsel have adequately represented the Class pursuant to Rule 23(e)(2)(A), the settlement was reached through arm's-length negotiations between experienced counsel pursuant to Rule 23(e)(2)(B), the relief was adequate for the Class pursuant to Rule 23(e)(2)(C), and the Class Members were treated equitably relative to each other pursuant to Rule 23(e)(2)(D).

The Court also finds that the remaining *Grinnell* factors—the stage of the proceedings and the amount of discovery completed, the ability of the Defendants to withstand a greater judgment, the range of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation—weigh in favor of final approval.

The only factor the Court could not address in the Preliminary Approval Order was the reaction of the class to the settlement. *See* Preliminary Approval Order at *6. With respect to that factor, the response to the settlement has been positive. (Pl. Mem. at 1, 7-8.) Class Members filed 181 claims, and no Class Member objected to the settlement or requested to opt out from the Class. (*Id.* at 1.) Thus, that factor, too, weighs in favor of final approval.

Accordingly, because the Rule 23(e)(2) and *Grinnell* factors all weigh in favor of approval, the Court approves the proposed settlement as fair, reasonable, and adequate.

### 2. Approval of FLSA Collective Action

Approval of a collective action requires two steps. *See D'Angelo v. Hunter Business School, Inc.*, No. 21-CV-3334 (JMW), 2023 WL 4838156, at *8 (E.D.N.Y. July 28, 2023) (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). The Court must make an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether an FLSA violation occurred. *See id.* Then, the Court must determine whether "the plaintiffs who opted in are actually similarly situated to the named plaintiffs. *Id.* (citation omitted).

In the Preliminary Approval Order, the Court already found that the potential opt-in plaintiffs were similarly situated to Named Plaintiffs. *See* Preliminary Approval Order at *3. The Court now finds that Named Plaintiffs have met their burden of showing that Named Plaintiffs and the Class Members who opted into the collective action were similarly situated. Plaintiffs and those Class Members all "suffered similar harm because of the same alleged acts and omissions by Defendants," namely the Highbury Defendants' failure to pay them overtime wages and violations of the Wage Theft Prevention Act. Preliminary Approval Order at *1; *see D'Angelo*, 2023 WL 4838156, at *9 ("Plaintiffs met the burden of showing that the named Plaintiff and the Class Members were similarly situated, namely because they had substantially similar job requirements and pay provisions").

The Court must also inquire as to the fairness of the settlement. *See D'Angelo*, 2023 WL 4838156, at *9; *Lora v. To-Rise, LLC*, No. 16-CV-3604 (SJB), 2020 WL 8921400, at *5 (E.D.N.Y. June 3, 2020) ("To approve such a settlement, the Court must find that the agreement is fair"). Where a case involves both a class action and FLSA collective action, and the class action has already been approved, the Court will only analyze "the collective action to see whether the settlement reflected a fair and reasonable compromise, specifically, whether the settlement occurred as a result of arms-length negotiations." *D'Angelo*, 2023 WL 4838156, at *9 (citations omitted). In determining the fairness of a proposed settlement, "a court should consider the totality of circumstances, including

4

but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion;" and (6) the reasonableness of any award of attorneys' fees. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012) (internal quotation marks and citations omitted); *see Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

The Court finds that the settlement amount and payment plan are fair and reasonable in light of the risks and burdens of further litigation, that the settlement was the product of arm's-length bargaining between experienced counsel with no possibility of fraud or collusion, and that the attorneys' fees, as set forth below, are reasonable. Accordingly, the FLSA collective action is approved.

### 3. Service and Retaliation Awards

The Named Plaintiffs initiated this class action and made significant contributions to the prosecution of the litigation. They served the Class by providing detailed factual information regarding their employment status, job duties, and compensation; providing the employment status, job duties, and compensation of Class Members; assisting with the preparation of pleadings; staying informed and in constant communication with Class Counsel regarding the progress of their action; and assuming the burdens associated with being a named plaintiff and assisting with litigation, including sitting for depositions. (Stein Decl. ¶¶ 17-20; *see* Pl. Mem. at 13-15.) In addition, the Named Plaintiffs assisted Class Counsel with the settlement negotiations, attended several settlement conferences, and made themselves available throughout the lengthy settlement process. (Stein Decl. ¶ 21.)

Accordingly, the Court approves the service awards to Plaintiffs in the amount of $4,500.00 each, to be paid from the Settlement Amount. (Settlement Agreement ¶ 1(ee).) Such payments "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by coming and continuing as a litigant, and any other burdens sustained." *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-CV-4270 (PAC), 2009 WL 5851465, at *6 (S.D.N.Y. Mar. 31, 2009) (citing *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997)).

Moreover, a plaintiff "who has been exposed to a demonstratable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded." *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007). Accordingly, the Court approves retaliation compensation to the ten Retaliation Plaintiffs named in the Settlement Agreement, who were alleged to have been retaliated against by the Highbury Defendants after becoming plaintiffs in this case, in the amount of $7,500.00 each, to be paid from the Settlement Amount. (Settlement Agreement ¶¶ 1(dd), 11(a).) *See, e.g.*, *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18-CV-7854 (LJL)(KHP), 2021 WL 535635, at *5 (S.D.N.Y. Feb. 12, 2021) (collecting cases and approving payments for releases of claims for, *inter alia*, retaliation); *deMunecas v. Bold Food, LLC*, No. 09-CV-440 (DAB), 2010 WL 3322580, at *11 (S.D.N.Y. Aug. 23, 2010) (finding reasonable retaliation compensation of $15,000).

### 4. Attorneys' Fees and Costs

Plaintiffs request $666,666.67 in attorneys' fees, amounting to 33.3% of the Settlement Amount of $2,000,000.00.[2]

---

[2] Plaintiffs incorrectly assert that this figure represents "33.3% of the *net* Settlement Amount" (Pl. Mem. at 19) (emphasis added), but they have requested 33.3% of the Settlement Amount, consistent with the Settlement Agreement. (Settlement Agreement ¶ 9(a) ("Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third (33.33%) of the Settlement Amount").)

In assessing the reasonableness of attorneys' fees, courts in this Circuit may utilize either the percentage-of-the-fund or the lodestar method. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). The "trend in this circuit is toward the percentage method because it 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Mariani v. OTG Management, Inc.*, No. 16-CV-1751 (CLP), 2018 WL 10468036, at *12 (E.D.N.Y. Sept. 28, 2018) (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 121). Even if a court utilizes the percentage method, the lodestar method remains valuable "as a 'cross-check' on the reasonableness of the requested percentage." *Id.*

Attorneys' fees amounting to one-third of a settlement fund are routinely approved in this Circuit. *See, e.g.*, *Karic v. Major Auto. Companies, Inc.*, No. 09-CV-5708 (CLP), 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (collecting cases and noting that "Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund").

Contemporaneous billing records submitted by Class Counsel demonstrate that they incurred $128,597.50 in attorneys' fees before the date of the final approval hearing, not including time spent and already compensated for in an earlier phase of this litigation.[3] Thus, the lodestar multiplier for Class Counsel's requested fees is 5.18. This multiplier is at the high end of those approved in this district. However, several factors weigh in favor of approving this amount. Class Counsel has worked on this case for six years and will continue to expend additional work during the two-and-a-half-year payout period. In addition, the hourly rates at which Class Counsel billed in this matter are modest. Accordingly, the Court finds the 5.18 lodestar multiplier to be reasonable. *See Donnelly v. Peter Luger of Long Island, Inc.*, No. 13-CV-1377 (LDW)(ETB), 2014 WL 12769046, at *8 (E.D.N.Y. Nov. 13, 2014)

---

[3] On May 24, 2018, the Court granted Plaintiffs' request for attorneys' fees with respect to "fees and costs incurred up to January 18, 2018, the date of the Court's denial of Defendants' motion to vacate." (Dkt. 124 at 3-5.)

7

("Courts regularly award lodestar multipliers between two to six times lodestar"); *Zeltser v. Merrill Lynch & Co., Inc.*, No. 13-CV-1531 (FM), 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (approving lodestar multiplier of 5.1); *Athale v. Sinotech Energy Ltd.*, No. 11-CV-5831 (AJN), 2013 WL 11310686, at *8-9 (S.D.N.Y. Sept. 4, 2013) (reducing lodestar multiplier from 7.04 to 5.65); *Roberts*, 979 F. Supp. at 197 (approving lodestar multiplier of 5.5). Moreover, because "'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09-CV-6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (citation omitted).

The Court approves the award of costs to be paid to Class Counsel of $7,206.70, as "[c]ourts typically allow counsel to recover their reasonable out-of-pocket expenses." *Zeltser*, 2014 WL 4816134, at *10. Although the Motion requests $8,096.88 in costs (Motion ¶ 7; *see also* Pl. Mem. at 25), the Settlement Agreement states that Plaintiffs would be entitled to "litigation costs and expenses up to $7,206.70." (Settlement Agreement ¶ 9(a).) Plaintiffs explained that their request for an increased amount was due to an expense incurred after the motion for preliminary approval was granted and an expense item that was overlooked when calculating costs for the Settlement Agreement. (Dkt. 218 at 1.) However, because Class Members were not given notice of this increase in costs, Plaintiffs agreed to waive the increased amount and limit their reimbursement request to $7,206.70. (*Id.*)

**5. Claims Administrator Fees**

The Court finds ALCS's Claims Administrator fees in the amount of $58,408.00 to be reasonable and approves payment of that amount from the Settlement Fund. (Settlement Agreement ¶¶ 6(b), 9(a); Stein Decl. ¶ 50.)

## CONCLUSION

Having considered the Motion, the supporting declarations, the arguments presented at the fairness hearings, and the complete record in this matter, the Court (1) grants final approval of the class action settlement as memorialized in the Settlement Agreement; (2) grants final approval of the FLSA collective action; (3) approves the service awards to the Named Plaintiffs in the amount of $4,500 each; (4) approves the retaliation compensation to the Retaliation Plaintiffs in the amount of $7,500 each; (5) approves an award of attorneys' fees and costs in the amount of $666,666.67 and $7,206.70, respectively; and (6) approves a payment to ALCS for administration fees in the amount of $58,408.

The terms and conditions of the Settlement Agreement are approved. The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement. The entire case is dismissed on the merits and with prejudice, with each side to bear its own attorneys' fees and costs except as set forth in the Settlement Agreement. This Final Order and Judgment shall bind and have res judicata effect with respect to all FLSA collective action members, and all Rule 23 Class Members who have not opted out of the applicable Class.

Without affecting the finality of this Final Order, the Court will retain jurisdiction over the case following the entry of the Judgment and Dismissal until all installments have been paid by Defendants as provided for in the Settlement Agreement. The parties shall abide by all terms of the Settlement Agreement and this Order.

SO ORDERED:

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: February 20, 2024
       Brooklyn, New York